{¶ 1} Defendant-appellant Brandon Higgins was adjudicated delinquent after entering an admission for fleeing and eluding[1] (though counsel for both the state and Higgins refer to the charge asalluding — and we could not resist alluding to this error) and for improperly handling a firearm in a motor vehicle.[2] The fleeing-and-eluding charge had a gun specification. In exchange for Higgins`s plea, the state requested that the juvenile court retain jurisdiction, and that additional charges of obstructing official business[3] and carrying a concealed weapon[4] be dismissed. The court committed Higgins to the Department of Youth Services for a minimum period of eighteen months, the maximum period ending on his 21st birthday. That same day, the court put on journal entries that stated that Higgins`s sentence was a minimum period of two years, the maximum period ending on his 21st birthday.
 {¶ 2} Higgins now challenges this discrepancy on appeal, arguing (1) that his admission to the charges was not knowing, voluntary, and intelligent, and was in violation of the Fifth, Sixth, andFourteenth Amendments to the United States Constitution, as well as Sections 10 and16, Article I, of the Ohio Constitution; (2) the juvenile court erred by committing him to concurrent terms at his disposition hearing, but then ordering him to serve consecutive terms in its journal entry; and (3) that his trial counsel was ineffective for failing to ensure that the judgment entry correctly stated the commitment. Higgins is, for the most part, correct.
 I. Wrong Place, Wrong Time, Wrong Decision {¶ 3} On December 4, 2005, Higgins was 16 years old and a senior in high school. He was in the Bond Hill neighborhood of Cincinnati and accepted a ride with an acquaintance. Although Higgins saw that there was a gun in the car between the two front seats, he still entered the car.
 {¶ 4} St. Bernard Police stopped the car for speeding. Before the officers approached, Higgins attempted to hide the gun from the officers` view. The officers asked the driver to get out of the vehicle. The officers noticed an odor of marijuana and then searched the driver. After the search, the driver ran away from the police.
 {¶ 5} At this time, Higgins panicked, moved to the driver`s seat, and began driving the car away, leading the officers on a pursuit. The pursuit ended a short time later, when Higgins pulled down a dead-end street. He jumped out of the car and ran away before police could catch him. Once Higgins arrived home, he contacted his attorney. He then surrendered to police, provided a full statement, and identified the driver.
 {¶ 6} Higgins informed the court that he realized that he should never have accepted that ride. He admitted that he panicked because he knew there was a gun in the car and he was on probation.
 {¶ 7} At the disposition hearing, the court asked Higgins if he understood the plea agreement, and he responded affirmatively. But the court did not conduct a full Juv. R. 29 colloquy. After accepting the admission, the court committed Higgins to the Department of Youth Services for one year on the gun specification, a minimum of six months, with the maximum ending on his 21st birthday, for fleeing and eluding, and a minimum of six months, with the maximum ending on his 21st birthday, for the improper handling of a firearm in a motor vehicle. The court made the two felony commitments concurrent, stating that it was sentencing Higgins to the "least amount of time" because he had cooperated with police. Thus, the total disposition was a minimum of eighteen months, with the maximum period ending on his 21st birthday. But the entries journalized by the court stated that the two felony commitments were to be consecutive, which resulted in a total minimum sentence of two years — evidently simply an error.
 II. Juvenile Rule 29 {¶ 8} In his first assignment of error, Higgins argues that the trial court failed to (1) determine whether he understood the nature of the charges against him; and (2) properly advise him of the constitutional rights that he was waiving by entering the admission.
 {¶ 9} Juv. R. 29(D) provides, "The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; and (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
 {¶ 10} As Juv. R. 29(D) indicates, a court is required to comply with both subsections (1) and (2) before accepting the admission of a party. The rule also places an affirmative duty upon the juvenile court to personally address the juvenile and to determine that the juvenile, not merely his attorney, understands the nature of the allegations and the consequences of entering the admission.[5] And the test for a juvenile`s understanding of the charges is subjective, not objective.[6]
 {¶ 11} While strict adherence to the procedures imposed by Juv. R. 29(D) is not constitutionally mandated, courts have required substantial compliance with the rule.[7] And the failure of a court to substantially comply with the requirements of Juv. R. 29(D) constitutes prejudicial error that requires a reversal of the adjudication so that the juvenile may plead anew.[8]
 {¶ 12} It appears from the record that the trial court addressed the elements contained in Juv. R. 29(D)(1). The court asked Higgins whether he was entering his admission knowingly, intelligently, and voluntarily. But the record also reveals that the trial court did not address any of the elements contained in Juv. R. 29(D)(2). There was no discussion by the trial court to determine whether Higgins understood that by entering his admission he was waiving his rights to challenge the witnesses and evidence against him, to remain silent, and to introduce evidence at the adjudicatory hearing. Therefore, there was no compliance, substantial or otherwise, with the requirements of Juv. R. 29(D)(2).
 {¶ 13} A juvenile cannot knowingly, intelligently, and voluntarily waive his constitutional rights if he is not informed of what they are by the trial court prior to the court`s acceptance of the juvenile`s admission. Thus, we sustain Higgins`s first assignment or error. His adjudication must be vacated, and the cause must be remanded to the trial court so that Higgins may plead anew.
 III. Sentencing {¶ 14} In Higgins`s second assignment of error, he argues that the juvenile court erred when it committed him to the Department of Youth Services for concurrent terms at his disposition hearing but then ordered him to serve consecutive terms in its journal entries. The state has the temerity to argue that the court must have changed its mind and decided to impose two years. Although this issue is now moot since Higgins`s adjudication must be vacated, we agree with his assignment. The court`s mistake in the journal entries should have been corrected.
 IV. Ineffective Assistance of Counsel {¶ 15} In his third assignment of error, Higgins maintains that his attorney was ineffective by failing to ensure that the court`s journal entries contained the same commitment that was ordered at the disposition hearing. Because Higgins`s adjudication must be vacated, and he can plead anew, this assignment of error is moot.
 {¶ 16} Accordingly, we hold that because Higgins did not knowingly, intelligently, and voluntarily waive his constitutional rights when he was not informed of what they were prior to the court`s acceptance of his admission, the court`s judgment is reversed, and the cause is remanded so that Higgins may plead anew.
 Judgment reversed and cause remanded.
[1] R.C. 2921.331 
[2] R.C. 2923.16.
[3] R.C. 2921.31.
[4] R.C. 2923.12.
[5] See In re Beechler (1996), 115 Ohio App.3d 567, 571,685 N.E.2d 1257.
[6] Id.
[7] See State v. Billups (1979), 57 Ohio St.2d 31, 38,385 N.E.2d 1308.
[8] Id.; see, also, In re Christopher R. (1995), 101 Ohio App.3d 245,247, 655 N.E.2d 280.